Thank you, Your Honor. Devin Burstein, Federal Defenders, on behalf of Mr. Vargas-Soriano. I will endeavor to save two minutes for myself. In preparing for argument today, I happily came across United States v. Allen, Judge Berzon's opinion. And Judge Fernandez, I believe you were also on that panel. It was a unanimous opinion. And I think some of the language really speaks to this case. It's there, like here, the government was arguing that even if the district court was wrong in its application of a specific guidelines provision, it didn't really matter because the overall sentence was reasonable. Kagan Was that before or after the Mohammed opinion? I just don't know that. Burstein Free. Kagan Okay. Burstein It was a 2006 opinion. And Judge Berzon, you read the whole court and rejected that argument. And you wrote, when the district court calculates the guidelines incorrectly, however, and then essentially indicates that its decision is controlled by its incorrect calculation, the sentence cannot have been reasonable. And you also explain that as the district court's interpretation of the guidelines essentially controlled its determination of Allen's sentence, we review its interpretation de novo. And that's exactly what should happen here. Here, the court should reject the government's argument that the district court's application of the two specific guidelines provisions is besides the point because it's clearly the whole point. In cases like Mohammed or Vasquez-Cruz, when this court said we're not going to conduct a review of the actual application of the guidelines, it was doing so with the rationale, and this is quoting Mohammed, that the sentencing judge would still be free on remand to oppose exactly the same sentence by exercising his discretion under the now advisory guidelines. So what's the point? But here we know, because the district court specifically told us that if this court tells the district court that it was wrong in its application of Application No. 7 and the 5K2.21, that we'll impose a lower sentence. And that would lead to a sort of peculiar rule, though, in which, I mean, I understand your point, and it's a worthwhile one, but at the same time, you'd end up with sort of a split rule depending on what the district judge said he was going to impose. And I don't know whether the district judge, whether the district judge bothered to say what he would do absent the guideline departure or didn't bother to say that. Well, I think that in the – I understand the point. I think there's some tension already in the case law. But I understand your point, but I think in this specific case, on the facts that are currently before the Court, even under a unitary reasonableness review, right, here the district court specifically said, absent these departures, the lowest possible, the parsimonious sentence is 30 months. So here, in looking to whether the sentence it imposed was reasonable, complied with 3553A, I think the Court has to look at the way it applied the departures. Well, he said a lot of things. He did, Your Honor. And in a sense, one might almost say he sort of mucked up variances and departures when he was talking. In fact, he said at one point, I'm doing a departure, but I could do the same thing as a variance. And when he gets to the part you're talking about, he says, well, they said I couldn't consider that then. Right. But couldn't consider is different under true departures than under variances, isn't it? Right. Yes. I mean, it would be a different consideration. Well, the thing is, he could consider it. He could consider it, but he specifically said that he wouldn't consider it. He said he wouldn't consider it. He said, well, I can't do it, then this will happen. But he was saying if we say, if we were to say, well, you know, variance, departure, it all goes to substance, so he can do it. I understand the point, but I don't think that's a fair characterization of the record. Because in this case, he's very clear that he's doing it as a departure. I mean, he goes out very clear. He says I can do the same thing either way. But he goes through the record again and again, making very clear that he's using Application Note 7 to 201.2, and he's using 5K2.21. And he's specifically saying it's a departure. I mean, in the beginning of the sentence. At some point he seems to be saying I could do either way, but I wouldn't. Right. And he's saying if I'm not doing this as a departure, I'm going to give a lower sentence. And that's exactly the point. Now, if we, putting aside your procedural waiver concerns, if we looked at it as a departure or a variance, would our ruling be different depending on whether we look at this as a variance or as a departure? Would it matter? Yes. Well, we know under Evans-Martinez that a departure is specific. It has a meaning. This Court has held it has a meaningful distinction. No, I know. But I mean, would our review be different? Would the outcome be different? Would it change this opinion, do you think? Do you think that fact is determinative to your chance of success or failure? I'm not sure that it's determinative, but I think looking at it as a specific departure helps our case, because I think that departure is specifically tied. I'm sorry, Your Honor. Oh, I just want to know why. I mean, I guess I have the same question in that, I mean, assuming for the moment that you're right and we would review this as a departure, what's wrong with it as a departure? Well, this almost gets back to Evans. And I think, sorry, this almost gets back to Allen. So Evans-Martinez says, you know, guidelines, there's a term of art, it's specifically tied to the guidelines manual. And in Allen, Judge Berzon, you make the point that when you're doing guidelines work, you have to specifically apply the application notes as they were written. I understand that. So I want to know why these departures, if they were departures and if we were reviewing them directly, would be a problem. So beginning with Application Note 7 to 2L1.2, I think there are two fundamental problems here. First of all, Application Note 7 requires a substantiality finding that's not in the record. But moreover – I mean, that seems like a really tough argument. I mean, he kept saying this is serious, this was really, you know, much more serious than the regular crime. I mean, he didn't use the word substantial, but he certainly conveyed that meaning. He said it was more serious than the four-level departure, that's for sure. And he does say it's more serious than the eight. But I think in addition, the other problem, even if you don't agree on the substantiality prong, the other problem is that he departed from the wrong conviction. Well, he was very clear about that, too. I mean, he said, I understand that there's a four-level and an eight-level, and I'm saying that there should be a ten-level. Had he said that, that would be a different story. But he doesn't say that. He doesn't say there should be a ten-level. He says I'm going to depart up two levels from the – I'm going to depart up two levels. Because I think it should be a ten-level. He doesn't say I think it should be a ten-level. And I think that there's a distinction. I tried to draw – He makes it quite clear that he thinks that. He says if I went with a four-level because of this funny thing the Ninth Circuit does, whatever the – however you put that, if I went with a four-level, that wouldn't be enough. I couldn't – and I went up there. It'd have to get over – it'd have to get over ten anyway. It'd have to get up to ten anyway. It wouldn't be enough. I couldn't do anything there. And the guideline says, well, you ought to start with a higher one. Well, I could start with either one. I think that's what he says. It should be ten, he says, period. Well, you know what, Your Honor? If that's what he meant, that's what he should have said. And he doesn't say that. And I think that's the problem. It depends on how you read it. That's what he says to me. Well, I think – I try to make the point that going up two levels from an eight-level enhancement is qualitatively different than more than doubling and going up six levels from a four. I mean, that's a very different thing. If you think something is a little bit more serious, maybe you'd go up two levels. But something, you know, something has to be a lot more serious to go up to more than double it. And I think that that finding – More than doubled the category, but it didn't more than double the sentence. It didn't more than double the sentence. So when we're talking about seriousness and incremental standards in the Ninth Circuit standard that the bigger the change, the more the justification is required. Right. Do we look to the end result? That is, let's say that in this case it went from 30 to 37 months. So roughly 20 percent. Or do we look to the change of the rating, the categories? Well, I think that this Court can do both, but I think here – Do you have to choose? I mean, which runs the show? Well, I think the procedure by which the judge operated here runs the show. I mean, we have cases in the Ninth Circuit like Mancini's Flores that talk about when we're reviewing for abuse of discretion, you know, we have to look at the way the Court got there. Because unless we know that, we can't conduct a meaningful appellate review. Can I ask a question? The one thing you're not contesting here, as I understand it, is the notion that if the modified categorical approach doesn't apply, they can nonetheless go to the facts that you couldn't have used for the modified categorical approach for this purpose. Application Note 7 seems to indicate that he can consider – I mean, that's the specific example they use of a drug conviction that wouldn't qualify as a drug trafficking offense. You know, you have less than a minute left. I do, Your Honor. I'm just trying to answer all the questions that are posed. But that if it was a quantity of, you know, possession for nothing, just straight possession, but it was a quantity that indicated that it was for sale, that they could consider that. I mean, personally, I don't agree with that, but that does seem to be the plain language of the guideline. All right. If you'd like a minute in rebuttal, we'll give you a minute in rebuttal. Thank you very much, Your Honor. Good morning. Kyle Hoffman for the United States. I'd like to start with one background point about the sentencing hearing that I think might clear up a little bit of confusion, and that's the idea that Judge Moskowitz bumped up two levels from a wholly unrelated conviction. I don't think that's correct. I think that he was very clear that he was focusing on the child abuse conviction, that because of the vagaries of the modified categorical approach, it was going to score as a plus four. He thought it was a much more serious offense than the plus four. He says that on page 52. It's not just any old felony, essentially, and it's a more serious offense, he says that, than the aggravated felonies, plus eight. He says it on page 53. And then he says much more serious on page 55. And this goes to the substantiality finding. He directly quoted the language of the guidelines before he started into this analysis. So I would suggest there was a finding and so on. And it was keyed directly to the child abuse conviction. And do you agree that it's correct for us to focus on the child abuse history question rather than the, you know, false identification offense characteristic? Well, I think that's the real dispute. Because he said that would be what would cause him to change his sentence. So that's what the focus is. That's what's driving the sentence. But the plus two, this language about plus two, what I think is important to understand is that everybody agreed that there was a felon in possession conviction that was going to score a plus eight anyway. Okay. And that's defense counsel from Mr. Vargas said exactly. There's a plus eight in the background. That's at page 46 of the excerpt's record. And then at page 53, when the court's going through its analysis, you know, there's an eight-level increase to begin with. And that's all referring to the plus eight for the felon in possession. So the plus two is just recognizing that there's already going to be somewhat of a bump up for this other conviction. Do you have any clue why the district court was so focused on trying to fit this in the departures instead of going? I don't know that, Your Honor. And I think it's come up in the discussion prior. It was also pretty clear, it seems from reading the transcript, that both government counsel and the court acknowledged that you can call it a departure, you can call it a variance, but either way it's going to come out the same way for these reasons, substantive reasons. But when you filed your original brief, your brief addressed it as a departure, didn't it? Isn't that what you were addressing? It was a variance. You were addressing it as a variance. Correct. And that's absolutely correct. But I would point the court to page 29 of the excerpts where the district court said, but these could both be departures. They would, is the response. And that's very early on in the hearing. So everybody understands that, well, the court seems to be going down, as Ms. Brezon has indicated, the departure route rather than the variance route. And the substance of it was briefed, well, three months prior to the hearing. Everybody knew this was the substance. It was the issue of the child abuse and the dismissed conduct, the aggravated identity theft conduct. Your brief keeps talking about the modified categorical approach as a fortuity, which is a lot. It is what it is. Well, that may be, I mean, it has, it's there for a reason. The reason is essentially that if you don't base the treatment of a prior conviction on the actual, what you know about the conviction as opposed to the facts, you're off in another trial and a bunch of factual findings. And so what's troubling me is that that's essentially what's going on here. I understand maybe this is what the guidelines are contemplating. But it seems to me that there was, I mean, as to what happened in this child abuse conviction, there were, if you were to do it completely, you'd have to have a whole other little proceeding. I think I understand Your Honor's concern. I think I think we maybe could have been more precise in our language in describing what the modified categorical approach is to law. But it's also true that, as Mr. Burstein acknowledged and I think has been acknowledged throughout the proceedings, that there is this application note and it does specifically say when there's a conviction for possession, this is just an example, not, it's not confined to this, but the actual facts of the case seem to indicate it's much more serious than that. But the district court was treating this and he said it was tantamount to a crime of violence. The defendant said it had a bunch of explanations for what actually happened in this child abuse issue. That is correct. And what did the district court know about it other than what the police report was? This case was never tried. The underlying case was never tried. That's true, Your Honor. I don't dispute that. The government did submit the medical records, the police report, the plea agreement or the plea colloquy. I mean, there was a lot before the court. And if you, obviously the court has read this, the defense counsel did a pretty nice job of trying to say this isn't as serious as you think it is. Now, the district court didn't agree with that, but what I'm trying to say is that they, they engaged on the issue fully and it was fully aired and fully argued. And the district court thought, no, this is a, this is a very serious. Did they restrict it in any way in their argument, depending on whether this was going to be considered as a variance or a departure? I don't believe so, Your Honor. There was no restriction on what they could have argued or presented. Correct. Presumably they could have asked for a hearing, but they didn't. Right. The substance of this was brought up three months in advance. There were a few continuances. If they wanted to have a, if they wanted to have an evidentiary hearing, could they have had an evidentiary hearing? They could have. As to what actually happened in the underlying case? They could have. I mean, there was, there were, there was a briefing where the court or the government asked for these things on the grounds of variance, admittedly. But it submitted all of this material from the underlying. Did the court specifically say that either one could get a postponement of the hearing if they wanted to put some evidence on? Well, they didn't say if you want to put something on, but they did say at the very beginning of the hearing, I'm ready to go. Are you, do you want a continuance? Twice. And both sides were silent on that. Well, no, the defense counsel said, no, I don't. Nobody took him up on that offer. And the, and it was. So this whole problem that I'm identifying is just not the problem in this case. It might be a problem in another case, essentially. That's one way to resolve it, yes, Your Honor. So, now, my opponent started out with trying to liken this case to Allen. And I'd suggest that's not, that's kind of an apples and oranges comparison. And the reason I'd suggest that is that Allen was about, purely about, does this apply to get up for this counterfeiting offense? Departures? Departures don't exist. First of all, you don't need that. I mean, why, it does appear that this is, this case doesn't fit very neatly into Mohammed and whatever the most recent case was, Vargas. Right. Whatever. Because the district judge, he really cared whether it was departure or variance. You might say, and the premise of Mohammed in those cases, it wouldn't make any difference. The district judge would do the same thing. And he said he wouldn't. So why, but on the other hand, if we agreed with you as to the merits of the departures, we just wouldn't need to get into any of that. That's true. And I submit that the departures are correct. But I also submit that the district court did a kind of belt and suspenders approach. I think Judge Fernandez said he maybe said too much. I think that was, he was belt and suspendering it and saying, doing this as a departure, but the same analysis would be there as a variance. He said I might be able to do this as a variance, but I wouldn't. Didn't he say that? No. I don't agree with that, Your Honor. What he said was if the appellate court disallowed what I'm doing on the child abuse conviction, so that I couldn't consider that, I'd only go up to 33 months based on the district court. You think they couldn't consider it meant either as a variance or as a departure. Right. That's how I read it. And the part where the district court is pretty clear that I'm doing this analysis as a departure, but I could do it easily as a, just as well as a variance, is I believe it's at page 55. Justice, he was presented with the possibility of doing it as a variance. That's what the government was asking for. He said, no, I'm not doing it that way. Why did the district court stay on that one track rather than another track? I don't have an answer to that, Your Honor. So unless the Court has further questions. Thank you very much. Thank you. If you'd like a minute in rebuttal, you may have it, but you don't need to use it. I'll take your time. Thank you very much for indulging me. I think the problem that you identified, Judge Berzon, is here, and I think this is why. Had notice, proper notice been given that the district court was going to actually depart, use these specific departures, as Your Honor has noted, and it's clear from the record. Then I think what would have happened, it would have triggered in the trial attorney's mind, hopefully, the ability to ask for either a continuance or specifically brief the specific guidelines departures, whereas 3553A and the variance idea comes as a – it opens up a wide range, a myriad of factors that the district court can consider. But the factual problem would be the same. In other words, what concerns me is whether the facts were adequately proven, but nobody seems to care about that. And the same factual problem would have arisen if it were a variance or if it were a departure. So if you wanted to have a hearing, you would have had to – I mean, you know, an evidentiary hearing, you could have asked for one as to a variance or as a departure, and you didn't. I don't know about you. But I think there are specific findings associated and specific procedures associated with the departure regime that would have triggered the need for an evidentiary hearing, whereas 3553 just says basically, here's all the information that we need. I'm sorry, but I don't see that. If the information – relevant information was the assumption about what happened in this underlying case, then you would be equally entitled to an evidentiary hearing under 3553A as well, no? Our position is that if he had given proper notice under Rule 32H, which he wasn't and which is plain error under Evans-Martinez, that would have triggered, you know, a specific guidelines dispute. Okay. All right. Your time is up. Thank you very much. Thank you for counsel. Thank you to counsel for a helpful argument. And the case of United States v. Barker-Soriano is submitted. The next case, United States v. Ramirez, has been submitted on the briefs. And the next case, Ortiz v. Yates, will be argued. Thank you.
judges: Ebel, Fernandez, Berzon